# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DERWIN JULES JACKSON, | CASE NO. 1:07-cv-00178-OWW-SKO PC |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT DEFENDANTS' MOTION FOR SUMMARY JUDGEMENT BE GRANTED |
| v. | |
| W. SULLIVAN, et al., | (Doc. 45) |
| Defendants. | OBJECTIONS DUE WITHIN 30 DAYS |
| _____/ | |

Plaintiff Derwin Jules Jackson ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  On July 26, 2010, Defendants Meadors, Stainer, Traynham, Sullivan, Evans, and Phillips ("Defendants") filed a motion for summary judgement.  (Doc. #45.)  Plaintiff filed an opposition on November 15, 2010.  (Docs. #50-53.)  Defendants filed a reply on November 23, 2010.  (Doc. #54.)

For the reasons set forth below, the Court will recommend that Defendants' motion for summary judgement be granted.

## I.     Background

### A.     Plaintiff's Claims

This action proceeds on Plaintiff's complaint filed on February 1, 2007.  (Doc. #1.)  Plaintiff alleges that his rights under the First Amendment, Eighth Amendment, and the Religious Land Use and Institutionalized Persons Act ("RLUIPA") were violated by prison officials at the California Correctional Institution in Tehachapi, California.  ("CCI-Tehachapi").

1

1    Plaintiff was transferred from Ironwood State Prison to CCI-Tehachapi sometime around

2    September 29, 2004.  At the time, Plaintiff had a 90-day deadline to file a writ of certiorari with the

3    United States Supreme Court.  Plaintiff requested his legal materials so he could prepare for the

4    deadline.  Plaintiff was told that he would not receive his legal materials until he appeared before

5    the classification committee.  Plaintiff filed an administrative appeal to receive his legal materials

6    sooner so he could meet the 90-day deadline.  The appeal was partially granted and Plaintiff was

7    given some of his legal materials, but he was not given access to the law library.  Plaintiff alleges

8    that Defendants Doe #1 and Doe #2[1] told Plaintiff that he had to cut the braids in his hair before he

9    could use the law library.  Plaintiff refused to cut his hair because he was a Rastafarian and cutting

10   his hair was against his religious beliefs.  Plaintiff was also denied access to the exercise yard and

11   other activities because he refused to cut his hair.  Plaintiff claims Defendants B. Phillips and M.S.

12   Evans refused to let Plaintiff use the law library on a later date because of the prison's grooming

13   policy.

14   Plaintiff filed another administrative appeal because he was denied outdoor exercise and

15   visitation rights because of his hair.  The appeal was denied by Defendants T.W. Meadors and J.L.

16   Cobbs.[2]  Plaintiff claims his fiancee wrote a letter to Defendant Sullivan informing him of the

17   situation, but Sullivan failed to intervene.

18   Plaintiff also alleges that Defendants T. Traynham and M. Stainer deprived Plaintiff of his

19   legal materials in retaliation for filing administrative appeals.  Plaintiff also claims Traynham

20   transferred Plaintiff away from his family to Salinas Valley State Prison for retaliatory reasons.

21   The Court screened Plaintiff's complaint on January 29, 2009.  (Doc. #9.)  The Court

22   determined that Plaintiff's complaint stated cognizable claims against Defendants Sullivan, T.W.

23   Meadors, J.L. Cobbs, B. Phillips, and M.S. Evans for violating the Eighth Amendment and the

24   RLUIPA.  Plaintiff also stated cognizable claims against Defendants T. Traynham and M. Stainer

25   ///

26

27        [1]Plaintiff did not identify or serve any of the "Doe" defendants referred to in his complaint.

28        [2]Defendant J.L. Cobbs has failed to plead or otherwise defend against Plaintiff's claims.  The Court
received a waiver of service from Cobbs on August 19, 2009.  (Doc. #26.)

1  for retaliating against Plaintiff's exercise of his First Amendment rights.  All other claims raised in

2  Plaintiff's complaint were dismissed on May 7, 2009.[3]

3            **B.    Defendants' Motion for Summary Judgement**

4           Defendants' motion for summary judgment argues that Defendants are entitled to summary

5  judgement because 1) Defendants Phillips, Stainer, Evans, and Meadors did not cause or contribute

6  to any violation of Plaintiff's rights through their processing of Plaintiff's administrative appeals,

7  2) Defendant Sullivan did not cause or contribute to any violation of Plaintiff's rights, 3) Defendants

8  Stainer and Traynham did not retaliate against Plaintiff for filing administrative appeals, and 4)

9  Defendants are entitled to qualified immunity.

10          Defendants argue that Phillips, Stainer, Evans, and Meadors cannot be liable for the violation

11  of Plaintiff's rights merely because they denied Plaintiff's administrative appeals.  Defendants argue

12  that Plaintiff has no substantive right to an administrative remedy process and the processing of

13  Plaintiff's appeals does not cause or contribute to any underlying constitutional violations.  Similarly,

14  Defendants argue that Sullivan is not liable because he did not author the regulation regarding the

15  prison's grooming policy.  Plaintiff alleges that his fiancee sent Sullivan a letter about the alleged

16  violations, but Defendants contend there is no indication that Sullivan actually received the letter

17  because Plaintiff's fiancee never received a response.

18          Defendants contend that Stainer and Traynham did not retaliate against Plaintiff.  Defendants

19  argue that Stainer and Traynham did not take Plaintiff's property and did not retaliate against

20  Plaintiff because of his administrative appeals.  Defendants also contend that Traynham had no part

21  in Plaintiff's transfer to Salinas Valley State Prison and the transfer was unrelated to Plaintiff's

22  administrative appeals.

23          Defendants contend they are entitled to qualified immunity.  Defendants argue that they have

24  not violated Plaintiff's constitutional rights.  Defendants further argue that even if they violated

25  Plaintiff's constitutional rights, the rights at issue were not clearly established.

26  ///

27

28          [3]The order dismissing Plaintiff's claims resulted in the dismissal of Defendants Rhods and Wilson from this suit.

## II.    Summary Judgment Legal Standards

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.   "A moving party without the ultimate burden of persuasion at trial-usually, but not always, a defendant-has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment." Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc., 210 F.3d 1099, 1102 (9th Cir. 2000). "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Federal Rule of Civil Procedure 56(c); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such ///

that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the Court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Federal Rule of Civil Procedure 56(c). The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the Court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

## III.   Discussion

### A.   Plaintiff's Claims Against Defendants Phillips, Stainer, Evans, and Meadors

Defendants contend that they are entitled to dismissal because Phillips, Stainer, Evans, and Meadors did not cause or contribute to any violation of Plaintiff's rights. Defendants contend that ruling on an administrative complaint does not cause or contribute to the violation of Plaintiff's rights. Plaintiff claims that Phillips, Stainer, Evans, and Meadors violated his rights under the Eighth Amendment and RLUIPA.

1
### 1.   Eighth Amendment Legal Standards

2   The Eighth Amendment prohibits the imposition of cruel and unusual punishments and

3   "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity and decency.'"

4   Estelle v. Gamble, 429 U.S. 97, 102 (1976) (quoting Jackson v. Bishop, 404 F.2d 571, 579 (8th Cir.

5   1968)).  A prison official violates the Eighth Amendment only when two requirements are met: (1)

6   the objective requirement that the deprivation is "sufficiently serious," and (2) the subjective

7   requirement that the prison official has a "sufficiently culpable state of mind."  Farmer v. Brennan,

8   511 U.S. 825, 834 (1994) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)).

9   The objective requirement that the deprivation be "sufficiently serious" is met where the

10   prison official's act or omission results in the denial of "the minimal civilized measure of life's

11   necessities."  Id. (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)).  The subjective

12   "sufficiently culpable state of mind" requirement is met when a prison official acts with "deliberate

13   indifference" to inmate health or safety. Id. (quoting Wilson, 501 U.S. at 302-303).  A prison official

14   acts with deliberate indifference when he or she "knows of and disregards an excessive risk to inmate

15   health or safety."  Id. at 837.  "[T]he official must both be aware of facts from which the inference

16   could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."

17   Id.

18   "'[S]ome form of regular outdoor exercise is extremely important to the psychological and

19   physical well being of the inmates.'"  Allen v. Sakai, 48 F.3d 1082, 1087 (9th Cir. 1995) (quoting

20   Spain v. Procunier, 600 F.2d 189, 199 (9th Cir. 1979)).  Thus, "[the] deprivation of outdoor exercise

21   [can] constitute cruel and unusual punishment."  Allen, 48 F.3d at 1087.  In order to plead deliberate

22   indifference, a prisoner must allege that prison officials knew of and disregarded a substantial risk

23   of serious harm to the prisoner.  E.g., Farmer v. Brennan, 511 U.S. 825,847 (1994); Frost v. Agnos,

24   152 F.3d 1124, 1128 (9th Cir. 1998).  An allegation that prison officials were aware that a prisoner

25   had been denied outdoor exercise for an extended period of time is sufficient to allege that the prison

26   officials acted with deliberate indifference to the prisoner's basic human needs.  See Perkins v.

27   Kansas Dep't of Corrections, 165 F.3d 803, 810 (10th Cir. 1999) (where complaint alleged that

28   officials had knowledge plaintiff was being denied outdoor exercise, "factfinder could infer both that

6

prison officials knew of a substantial risk of harm to plaintiff's well being...and that they disregarded that harm"); see also Allen, 48 F.3d at 1088 (summary judgment on deliberate indifference issue inappropriate where prisoner produced evidence that prison officials were aware that prisoner was denied outdoor exercise); Lopez, 203 F.3d at 1133 (genuine issue of fact as to whether defendants were deliberately indifferent where prisoner alleged that defendants ignored complaints about lack of outdoor exercise).   Where a prisoner alleges that he was denied outdoor exercise pursuant to an official policy, "a rational fact-finder after hearing the evidence might determine that the defendants acted with at least deliberate indifference to [the prisoner's] basic human needs . . . by placing inconsequential logistical concerns that might be no more than matters of convenience above [the prisoner's] need for exercise."   Allen,48 F.3d at 1088.

## 2.   **RLUIPA Legal Standards**

The Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA") provides:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution. . . , even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person–
> (1) is in furtherance of a compelling government interest; and
> (2) is the least restrictive means of furthering that compelling government interest.

42 U.S.C. § 2000cc-1.   In order to state a claim for violation of RLUIPA, a plaintiff must demonstrate that the defendants substantially burdened the exercise of his/her religious beliefs. Warsoldier v. Woodford, 418 F.3d 989, 994-95 (9th Cir. 2005).   If the plaintiff meets that burden, the defendants must demonstrate that "any substantial burden of the plaintiff's exercise of his/her religious beliefs is both in furtherance of a compelling governmental interest and the least restrictive means of furthering that compelling governmental interest."   Id. (emphasis in original).   "RLUIPA is to be construed broadly in favor of protecting an inmate's right to exercise his religious beliefs." Id.   Under RLUIPA, "religious exercise" is defined to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief."   42 U.S.C. § 2000cc-5(7)(A); Greene v. Solano County Jail, 513 F.3d 982, 986 (9th Cir. 2008).   "In fact, RLUIPA 'bars inquiry into

///

1  whether a particular belief or practice is 'central' to a prisoner's religion.'" Id. (quoting Cutter v.

2  Wilkinson, 544 U.S. 709, 725 n.13 (2005)).

3           **3.     Sufficiency of Plaintiff's Claims Against Appeals Reviewers**

4           The facts with respect to Phillips, Stainer, Evans, and Meadors' actions are largely not in

5  dispute.  Plaintiff wore his hair in dreadlocks.  Operational Procedure 111 required an inmate's

6  braids, ponytails, or dreadlocks to be separated and searched for contraband before he exits his cell.

7  Plaintiff filed three separate administrative appeals because prison officials did not allow Plaintiff

8  to visit his fiancee, did not allow Plaintiff to exercise outdoors, and did not allow Plaintiff to use the

9  law library.  These appeals were denied by Phillips, Stainer, Evans, and Meadors on the grounds that

10  Plaintiff failed to comply with Operational Procedure 111.[4]

11          An official may be liable for an ongoing constitutional violation if the official knew about

12  the ongoing constitutional violation and failed to act to prevent it.  Taylor v. List, 880 F.2d 1040,

13  1045 (9th Cir. 1989).  Accordingly, Plaintiff can state a claim against an appeals reviewer if Plaintiff

14  can prove that the appeals reviewer knew about an ongoing violation of Plaintiff's rights and failed

15  to act to prevent it.

16          Plaintiff alleges that Phillips, Stainer, Evans, and Meadors knew about an ongoing violation

17  of Plaintiff's rights because he filed appeals regarding the grooming regulations, was not given

18  outdoor exercise, and was being coerced to abandon his religious beliefs by changing his hairstyle.[5]

19  Plaintiff alleges that Phillips, Stainer, Evans, and Meadors failed to act to prevent the ongoing

20  violations because they denied Plaintiff's appeals when they should have granted his appeals and

21  thereby stopped the enforcement of the regulations that allegedly violated Plaintiff's rights under the

22  ///

23

24          [4]Plaintiff argues that his hair was in compliance with Operational Procedure 111 at all times, but prison
officials refused to search Plaintiff's hair.  Defendants contend that prison officials were unable to separate and

25  search through Plaintiff's dreadlocks, and Plaintiff's hair was therefore not in compliance with Operational
Procedure 111.  This dispute is not relevant for the purpose of determining whether Defendants' actions in reviewing

26  Plaintiff's appeals caused or contributed to the alleged violations of Plaintiff's rights.

27          [5]Defendants do not challenge the sufficiency of Plaintiff's evidence.  Defendants' sole argument in their
motion to dismiss is that Plaintiff cannot establish liability against an appeals reviewer.  Therefore, the Court has no

28  occasion to assess whether Plaintiff has sufficient evidence to support each element of his claims against Phillips,
Stainer, Evans, and Meadors.

1    Eighth Amendment and RLUIPA.  Plaintiff's allegations are therefore sufficient to give rise to a

2    claim for relief under Section 1983.[6]

3           **B.      Plaintiff's Claims Against Defendant Sullivan**

4           Defendants claim that Sullivan is entitled to summary judgment because Plaintiff has failed

5    to establish a causal connection between Sullivan and the alleged violation of Plaintiff's rights.

6    Plaintiff claims Sullivan is liable because he knew about the ongoing violation of Plaintiff's rights

7    and failed to act to prevent it.  As noted previously, a prison official may be liable for the underlying

8    violation under this theory.  See discussion supra Part III.A.2.

9           Defendants argue that Plaintiff has never spoken with Sullivan and has only alleged that his

10   fiancee sent Sullivan a letter informing him of the ongoing violations.  Defendants contend that

11   "there is no indication that Sullivan ever received this letter as Plaintiff's fiancé[sic] never received

12   a response to her letter."  (Mem. of P. & A. in Supp. of Mot. for Summ. J. 6:8-10, ECF No. 45.)

13   Defendants further argue that Sullivan did not author the hair grooming regulations.  As a result,

14   Defendants contend that Plaintiff cannot demonstrate a causal link between his claims and Sullivan's

15   actions.

16          The fact that Plaintiff's fiancee did not receive a response does not defeat Plaintiff's

17   allegation that Sullivan was aware of the ongoing violations.  Sullivan cannot escape liability by

18   simply choosing not to reply to letters that inform him of ongoing constitutional violations.  If

19   Sullivan received the letter, and was thereby informed of the ongoing constitutional violations and

20   failed to take action to stop the ongoing constitutional violations, he would be liable under Section

21   1983 regardless of whether he sent Plaintiff's fiancee a reply.[7]  While the lack of a response is

22   relevant, it does not definitely prove that Sullivan did not receive the letter and therefore did not have

23   ///

24

25          [6]Although Plaintiff states a cognizable claim against the appeals coordinator, the Court finds that those
     defendants are entitled to qualified immunity.  See discussion Part III.D.

26

27          [7]An argument could be made that the alleged letter could not have put Sullivan on notice of the ongoing
     violations because the letter did not mention anything about outdoor exercise or Plaintiff's religious beliefs.  A copy
     of the letter was attached to Plaintiff's complaint.  (Compl. Ex. J, ECF No. 1.)  The letter does not mention outdoor
28   exercise or Plaintiff's religious beliefs.  However, Defendants did not raise this issue in their motion for summary
     judgment and the Court has no occasion to rule on it.

                                                         9

knowledge of the ongoing violations.  Accordingly, Defendants have not carried their burden of demonstrating that there is no genuine issue of disputed fact.

## C.    Plaintiff's Retaliation Claims

Defendants argue that Stainer and Traynham did not retaliate against Plaintiff because of his administrative appeals.  In the prison context, allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a Section 1983 claim.  Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995).  "[A] viable claim of First Amendment retaliation entails five basic elements:  (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).  An allegation of retaliation against a prisoner's First Amendment right to file a prison grievance is sufficient to support a claim under Section 1983.  Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003).

### 1.    Retaliatory Property Deprivation Claim

Defendants contend that Stainer and Traynham did not confiscate Plaintiff's property and Plaintiff's property was not confiscated for retaliatory reasons.  Plaintiff claims his property was released to Traynham, who refused return it to Plaintiff for retaliatory reasons.  The Court construes Defendants' arguments as an assertion that Plaintiff does not have sufficient evidence to support his claim that Stainer or Traynham confiscated his property.

Plaintiff has submitted a declaration and some documents as evidence in his opposition.  Plaintiff's declaration states that "Defendants retaliated against Plaintiff because he filed numerous administrative appeals for the expression of his religion."  (Decl. of Pl. in Supp. of Pl.'s Opp'n to Defendants[sic] Mot. for Summ. J. ¶ 23, ECF No. 52.)  Plaintiff also declares that "Defendants Traynham and Stainer deprived plaintiff of his legal and personal property."  (Decl. of Pl. ¶ 24, ECF No. 52.)  Plaintiff further declares that "Plaintiff's property was released to Traynham after he was ///

released from the SHU, But[sic] Traynham refused to allow Plaintiff to have it, in retaliation to[sic] filing numerous appeals."

It is unclear how Plaintiff would have personal knowledge of the fact that Stainer or Traynham deprived Plaintiff of his legal property.  Plaintiff fails to describe any specific incidents where Stainer or Traynham told Plaintiff that they were depriving him of his property.  Plaintiff does not describe any incidents where he requested his property and Stainer and Traynham refused to release it, or any incident where Plaintiff personally observed Stainer or Traynham take his legal property.  Thus, it is unclear whether Plaintiff has personal knowledge that Stainer or Traynham deprived him of his property, or whether Plaintiff is merely assuming that Stainer or Traynham are responsible upon information and belief.  Plaintiff's vague conclusions are inadmissible unless they are based on his personal knowledge.  Federal Rule of Civil Procedure 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge"); Bank Melli Iran v. Pahlavi, 58 F.3d 1406, 1412 (9th Cir. 1995) (declarations based on information and belief in opposition to motion for summary judgment "entitled to no weight because the declarant did not have personal knowledge.").

Plaintiff's opposition argues that Plaintiff's property was taken after Plaintiff filed his inmate grievance.  Plaintiff does not state that Stainer or Traynham took Plaintiff's property.  Plaintiff instead contends that "[t]he staff in R&R released Plaintiff's property to Traynham, who decided that plaintiff was not going to receive his property."  (Pl.'s Mot. in Opp'n to Def.'s Mot. for Summ. J., Mem. of P. & A. Attached 8:10-12, ECF No. 50.)  Plaintiff has failed to demonstrate how he has personal knowledge of the fact that "staff in R&R released Plaintiff's property to Traynham."  Plaintiff has also failed to demonstrate how he has personal knowledge that Traynham "decided that plaintiff was not going to receive his property."  To the extent that Plaintiff's opposition can be treated as evidence in support of his opposition, these specific statements are inadmissible because Plaintiff has failed to establish his personal knowledge of those facts.  See Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004) ("because [the plaintiff] is pro se, we must consider as evidence in his opposition to summary judgment all of Jones's contentions offered in motions and pleadings, where such contentions are based on personal knowledge and set forth facts that would be admissible in

1  evidence, and where [the plaintiff] attested under penalty of perjury that the contents of the motions

2  or pleadings are true and correct.")

3       Plaintiff's opposition refers to an exhibit that purports to support his claim that Traynham

4  deprived Plaintiff of his property.  "Attachment 'C'" of Plaintiff's opposition appears to be two

5  pages of documents.  The first page appears to be a letter from the California Victim Compensation

6  and Government Claims Board.  The letter states that settlement authority for Plaintiff's claim has

7  been delegated to the Department of Corrections.  The first page does not contain any information

8  relevant to Plaintiff's retaliation claims.

9       The second page is a copy of a form stating "CCI Tehachapi" across the top and "CDC 128-

10  B" on the top right corner.[8]  The form appears to state that Plaintiff's property was being mailed,

11  donated, or destroyed because "Inmate refused to make a selection."  The form is dated November

12  5, 2004.  However, on the bottom of the form, a handwritten note states, "Property released to Lt.

13  Traynham 1-3-05."

14       The note attached to Plaintiff's opposition has not been authenticated and Plaintiff has not

15  laid a foundation for its admissibility.  It is unclear what the document is, who wrote it, where it

16  came from, or how Plaintiff obtained it.  It is unclear whether the handwriting on the document is

17  from Plaintiff or from a prison official.  To the extent that the document states that Plaintiff's

18  property was released to Traynham, that statement appears to be hearsay because Plaintiff has not

19  identified who wrote that note or demonstrated how the statement would be admissible as an

20  exception to the hearsay rule.  Accordingly, the document will be disregarded.

21       Plaintiff has failed to identify any admissible evidence in support of his allegation that Stainer

22  or Traynham deprived Plaintiff of his property.  The Court further notes that there is no evidence that

23  Stainer or Traynham acted with retaliatory intent.  Plaintiff contends that the timing of the

24  confiscation is evidence of retaliatory intent.  However, timing alone is not sufficient for Plaintiff

25  to prevail on a motion for summary judgement.  See Pratt v. Rowland, 65 F.3d 802, 808 (9th Cir.

26

27       [8]The second page of "Attachment 'C'" does not appear to be related to the first page.  Since Plaintiff has not

28  adequately explained what these documents are or where they came from, it is unclear why they were submitted
together as a single "attachment."

1995) (rejecting district court's conclusion that defendants acted with retaliatory motive based on the timing of adverse action when there was little else to support the inference of retaliatory motive). The timing of the confiscation does not serve as sufficient evidence of retaliatory intent when Plaintiff has no evidence regarding who confiscated Plaintiff's property or whether the unidentified person was even aware of Plaintiff's administrative appeals.   The Court will recommend that Defendants' motion for summary judgment be granted with respect to Plaintiff's retaliation claims based on the deprivation of his legal property.

## 2.   **Retaliatory Transfer Claim**

Defendants also contend that Traynham did not transfer Plaintiff to Salinas Valley State Prison and Plaintiff was not transferred for retaliatory reasons.  Defendants argue that Traynham was not a part of the classification committee that decided to transfer Plaintiff.

Plaintiff has failed to submit any admissible evidence to rebut Defendants' arguments. Plaintiff's declaration states that "Defendant T. Traynham used his power of persuasion to have Plaintiff transferred away from his family further up north for retaliation purposes[sic].  During the interview with Traynham Plaintiff expressed the need to be closer to his sister for support as she was battling stage three cancer."  (Decl. of Pl. ¶ 25, ECF No. 52.)  While Plaintiff may have personal knowledge of the statements he made to Traynham, Plaintiff has not demonstrated how he has personal knowledge of the fact that "Traynham used his power of persuasion to have Plaintiff transferred away from his family further up north for retaliation purposes." Accordingly, Plaintiff's declaration regarding those facts is inadmissible.    See Jones, 393 F.3d at 923.  Plaintiff has not submitted any other evidence in support of his claim that Traynham transferred Plaintiff to Salinas Valley State Prison.

Plaintiff has failed to submit sufficient evidence in support of his claim that Defendants Traynham and Stainer retaliated against him by transferring him to Salinas Valley State Prison. Accordingly, the Court finds that Plaintiff has failed to establish a genuine issue of material fact with respect to those claims.  The Court will recommend that summary judgment be granted in favor of Defendants with respect to Plaintiff's retaliation claims.

///

1       **D.**   **Qualified Immunity**

2       Defendants argue that they are entitled to qualified immunity.  Since the Court has already

3 concluded that Defendants Traynham and Stainer are entitled to summary judgement with respect

4 to Plaintiff's retaliation claims, the Court will only discuss Defendants' claim to qualified immunity

5 with respect to Plaintiff's claims against Defendants Phillips, Stainer, Evans, Meadors and Sullivan

6 under the Eighth Amendment and RLUIPA.

7       "The doctrine of qualified immunity protects government officials 'from liability for civil

8 damages insofar as their conduct does not violate clearly established statutory or constitutional rights

9 of which a reasonable person would have known.'"  Pearson v. Callahan, 129 S. Ct. 808, 815 (2009)

10 (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  "The protection of qualified immunity

11 applies regardless of whether the government official's error 'is a mistake of law, a mistake of fact,

12 or a mistake based on mixed questions of law and fact.'"  Id. (quoting Groh v. Ramirez, 540 U.S.

13 551, 567 (2004) (Kennedy, J., dissenting)).  Questions regarding qualified immunity should be

14 resolved at the earliest possible stage in litigation because qualified immunity serves as an immunity

15 from suit rather than a mere defense to liability.  Id.

16       In Saucier v. Katz, 533 U.S. 194 (2001), the Supreme Court mandated a two-step sequence

17 for resolving claims of qualified immunity.  First, a court must decide whether the facts alleged by

18 a plaintiff set forth a violation of a constitutional right.  Saucier, 533 U.S. at 201.  Second, if the

19 plaintiff has satisfied the first step, the court must decide whether the right at issue was "clearly

20 established" at the time of defendant's alleged misconduct.  Id.  If the defendant did not violate a

21 clearly established constitutional right, the defendant is entitled to qualified immunity from

22 plaintiff's claims.  Pearson, 129 S. Ct. at 816 (citing Anderson v. Creighton, 483 U.S. 635, 640

23 (1987)).  However, the Supreme Court has since held that the Saucier sequence is not mandatory in

24 all cases and courts may resolve the "clearly established" question first when the Saucier sequence

25 would result in a "substantial expenditure of scarce judicial resources on difficult questions that have

26 no effect on the outcome of the case."  Id. at 818.

27       Defendants contend that the facts alleged do not set forth a violation of Plaintiff's rights

28 under the Eighth Amendment or RLUIPA.  The Court disagrees.  Plaintiff alleges that Defendants

1  Phillips, Stainer, Evans, Meadors and Sullivan were aware that Plaintiff wore his hair in dreadlocks

2  for religious reasons and Plaintiff was not allowed to leave his cell because of his dreadlocks.

3  Assuming Plaintiff could carry his evidentiary burden and demonstrate that the policies prohibiting

4  his dreadlocks were a substantial burden on Plaintiff's exercise of his religious beliefs and the

5  policies did not further a compelling governmental interest or were not the least restrictive means

6  of furthering that compelling governmental interest, Plaintiff may have a claim against Defendants

7  for the violation of RLUIPA.  See Warsoldier v. Woodford, 418 F.3d 989, 994-95 (9th Cir. 2005).

8          Further, Plaintiff alleges he was deprived of outdoor exercise.  Assuming Plaintiff could carry

9  his evidentiary burden and demonstrate that Defendants were aware that Plaintiff was not receiving

10  outdoor exercise and that his health was at risk because of the lack of outdoor exercise, Plaintiff

11  would have a claim against Defendants under Section 1983 for the violation of Plaintiff's Eighth

12  Amendment rights.  See Allen v. Sakai, 48 F.3d 1082, 1087 (9th Cir. 1995) ("deprivation of outdoor

13  exercise could constitute cruel and unusual punishment"); Hebbe v. Pliler, No. 07-17265, 2010 WL

14  4673711, at *4 (9th Cir. 2010) ("'an inmate cannot be forced to sacrifice one constitutionally

15  protected right solely because another is respected'") (quoting Allen v. City and County of Honolulu,

16  39 F.3d 936, 940 (9th Cir. 1994)).

17          Defendants contend that the rights at issue were not "clearly established" at the time of

18  Defendants' actions.  Plaintiff bears the burden of demonstrating that the right allegedly violated was

19  clearly established at the time of the incident.  Green v. Camreta, 588 F.3d 1011, 1031 (9th Cir.

20  2009).

21          With respect to his RLUIPA claims, Plaintiff fails to identify any authority in his opposition

22  that clearly establishes his right to wear his hair in dreadlocks.  The events in question took place in

23  2004.  In 2005, the Ninth Circuit recognized that there was little circuit authority construing

24  RLUIPA.  See Warsoldier v. Woodford, 418 F.3d 989, 997 n.7 (9th Cir. 2005) ("There exists little

25  Ninth Circuit authority construing RLUIPA.").  The Court is unable to find any authority that would

26  have put Phillips, Stainer, Evans, Meadors, or Sullivan  on notice that forcing Plaintiff to cut his hair

27  or change his hairstyle would have violated RLUIPA.  See Johnson v. Woodford, 336 Fed. Appx.

28  594, 596 (9th Cir. 2009) (affirming summary judgment based on qualified immunity against a

Rastafarian prisoner challenging prison hair grooming regulations because right under RLUIPA was not clearly established); May v. Baldwin, 109 F.3d 557, 565 (9th Cir. 1997) (holding that regulations affecting religiously mandated hairstyles did not violate RLUIPA's predecessor statute, the Religious Freedom Restoration Act).

The Court also notes that because Phillips, Stainer, Evans, Meadors, and Sullivan are entitled to qualified immunity with respect to Plaintiff's RLUIPA claims, they are also entitled to qualified immunity with respect to Plaintiff's Eighth Amendment claims. Plaintiff's Eighth Amendment claims are premised on the fact that prison officials did not permit Plaintiff to exercise outdoors unless Plaintiff changed his hairstyles, which would have interfered with Plaintiff's exercise of his religion. A prisoner cannot be forced to sacrifice one constitutionally protected right to exercise another. Hebbe v. Pliler, No. 07-17265, 2010 WL 4673711, at *4 (9th Cir. 2010); Allen v. City & County of Honolulu, 39 F.3d 936, 940 (9th Cir. 1994).

Assuming the same reasoning applies to statutory rights such as those under RLUIPA, prison officials cannot force a prisoner to sacrifice his religious rights under RLUIPA to obtain outdoor exercise protected under the Eighth Amendment, or vice versa. However, if it is not clearly established that a prisoner has a statutory right under RLUIPA to wear his hair in dreadlocks, it cannot be said that it is clearly established that the Eighth Amendment is violated when prison officials force prisoners to remove their dreadlocks in order to obtain outdoor exercise. This is particularly true in light of the authority recognizing that prison grooming regulations are reasonably related to legitimate penological interests. See Henderson v. Terhune, 379 F.3d 709, 715 (9th Cir. 2004) (prison hair length regulations were reasonably related to legitimate penological interests, such as the need to prevent inmates from quickly changing their appearance, hiding weapons and contraband in their hair, displaying gang-related hairstyles, and maintaining a safe and hygienic prison environment). Plaintiff has failed to identify any authority that would have put Phillips, Stainer, Evans, Meadors, or Sullivan on notice that their policies violated clearly established law. Accordingly, Phillips, Stainer, Evans, Meadors, and Sullivan are entitled to qualified immunity with respect to both Plaintiff's Eighth Amendment claims and Plaintiff's RLUIPA claims.

///

**IV.     Conclusion and Recommendation**

The Court finds that Plaintiff has failed to establish a genuine issue of material fact with respect to his retaliation claims because Plaintiff has failed to submit any admissible evidence in support of his contentions that Defendants Stainer or Traynham retaliated against him.  The Court further finds that Defendants Phillips, Stainer, Evans, Meadors, and Sullivan are entitled to qualified immunity with respect to Plaintiff's Eighth Amendment claims and RLUIPA claims because at the time of their alleged conduct, there was no clearly established law regarding the application of RLUIPA to prison grooming regulations.

Based on the foregoing, it is HEREBY RECOMMENDED that Defendants' motion for summary judgment be GRANTED as follows:

1.     Plaintiff's Eighth Amendment and RLUIPA claims against Defendants Phillips, Stainer, Evans, Meadors, and Sullivan be DISMISSED based on the defense of qualified immunity; and

2.     Plaintiff's retaliation claims against Defendants Stainer and Traynham be DISMISSED and judgment be granted in favor of Defendants based on Plaintiff's failure to establish any genuine issues of material fact.

IT IS SO ORDERED.

**Dated:     January 13, 2011                             /s/ Sheila K. Oberto**
                                                     UNITED STATES MAGISTRATE JUDGE

17